UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| BENJAMIN C. PRICE, | ) | |
|---|---|---|
| Movant, | ) | |
| v. | ) | No. 2:09-CV-320 PS |
| | ) | (arising from No. 2:04-CR-81 PS) |
| UNITED STATES OF AMERICA, | ) | |
| Respondent. | ) | |

## **OPINION AND ORDER**

A jury found Benjamin Price guilty of being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. §922(g)(1). Because I found him to be an armed career criminal, he was subject to enhanced penalties under 18 U.S.C. § 924(e)(1) which calls for a mandatory minimum of 15 years and a maximum sentence of life. I sentenced him to a prison term of 250 months, to be followed by a three-year term of supervised release. Price appealed his conviction and sentence, and in an opinion issued March 27, 2008, the United States Court of Appeals for the Seventh Circuit affirmed the judgment. *See United States v. Price*, 520 F.3d 753 (7th Cir. 2008). Now Price has filed a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255, making four challenges to his conviction and sentence.

A motion under § 2255 allows a federal prisoner "in custody . . . claiming a right to be released" to attack his sentence on the grounds that it was imposed "in violation of the Constitution or laws of the United States, or that the court was without jurisdiction . . ., or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. §2255. Relief under §2255 is reserved for extraordinary situations. *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996). "If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party." Rule 4, Rules Governing

Section 2255 Proceedings for the United States District Courts. A district court may deny a §2255 motion without a hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. §2255(b).

## GROUND ONE: SIXTH AMENDMENT RIGHT TO COUNSEL

The first of Price's grounds for relief is a claim that he suffered a denial of counsel at a critical stage in the proceedings, in violation of his Sixth Amendment rights. The circumstances to which this claim relates are set out by the Court of Appeals in their opinion:

> The other part of the story on which the appeal turns concerns Price's zig-zags between accepting the representation of a series of lawyers and proceeding *pro se*. Immediately after Price was indicted, Public Defender John Martin entered an appearance for him on October 25, 2004. A short time later, Price moved to represent himself with standby counsel. Magistrate Judge Rodovich carefully warned Price of the pitfalls of that course of action, but Price persisted and the judge granted the motion. Less than a month later, on December 13, 2004, Price moved to substitute a new attorney and to withdraw his request to proceed *pro se*. The court acquiesced, and on January 7, 2005, it appointed Attorney Arlington J. Foley to represent Price. Foley worked diligently for several months, filing motions on Price's behalf, but Price wrote a number of letters to the court expressing his dissatisfaction with Foley. Price even went so far as to forward a copy of one of his letters to the Indiana Disciplinary Committee; at that point, the district court intervened and held a hearing on April 5, 2005, on the topic of Foley's representation. Everyone agreed that Foley would stick with the case, but on the first day of the initial trial, May 2, 2005, Price complained repeatedly about Foley. After the jury was selected and sworn in, Price renewed his complaints. The court finally offered Price the options of proceeding in the current trial with Foley, proceeding *pro se* with Foley as standby counsel, or accepting a mistrial and securing new counsel. After an overnight recess at the government's request, Price expressly consented to the mistrial. The court granted the mistrial on two grounds: Price's consent and its finding that there was a manifest necessity for a mistrial because of Price's lack of participation in the jury selection process. At that pont, the court appointed Charles Stewart to represent Price.

*Price*, 520 F.3d at 756-757. Price contends that his Sixth Amendment rights were violated when he was required, without benefit of counsel, to make the choice whether or not to opt for a mistrial.

As the Seventh Circuit's opinion helpfully states, Price was given *three* choices: proceeding to trial with his appointed counsel Arlington Foley, proceeding *pro se* with Foley as

2

standby counsel, or accepting a mistrial and securing new counsel. *Id*. at 757. The circumstances were not as simple and as bald as Price's current claim suggests. That is, he was not, at the point in question, involuntarily without counsel and forced to determine whether or not to consent to the mistrial. The choice was threefold, and at the time Price could have consulted Foley for his advice if he so chose. At the most basic level, no right to relief is shown on Ground One because Price was not in fact required to make a decision about consenting to the mistrial without the benefit of counsel.

In an abundance of caution, however, I will proceed with further alternative analysis of Ground One as a Sixth Amendment claim. "The Sixth Amendment guarantees an accused the assistance of counsel not just at trial, but whenever it is necessary to assure a meaningful defense." *United States ex rel Thomas v. O'Leary*, 856 F.2d 1011, 1014 (7th Cir. 1988), citing *United States v. Wade*, 388 U.S. 218, 225 (1967). Cases exploring the constitutional right to counsel have yielded the conclusion that it applies to all "critical stages" of the prosecution. A critical stage has been described as "any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial." *Wade*, 388 U.S. at 226. Critical stages have also been defined as "critical confrontations of the accused by the prosecution at pretrial proceedings where the results might well settle the accused's fate and reduce the trial itself to a mere formality." *Id*. at 224. Yet another formulation is that "[a] critical stage is one where potential substantial prejudice to defendant's rights inheres in the particular confrontation and where counsel's abilities can help avoid that prejudice." *Thomas*, 856 F.2d at 1014, citing *Coleman v. Alabama*, 399 U.S. 1, 9 (1970).

As to whether or not the choice at issue here constituted a "critical stage" of the proceedings, I note that Price had only hours before *requested* a mistrial based on prejudice he argued was suffered from the remarks of venireman Lonnie McDade. Asked about his work,

McDade replied that he was "employed with the Department of Justice at the Federal prison in Chicago, MCC Chicago." Transcript of May 2, 2005 [DE 85], p.86, ℓℓ. 15-16. After a bit more discussion of his work at the prison as the volunteer coordinator, McDade began "I just want to go ahead and I say that I do – well, I have seen the --." *Id*. at 87, ℓℓ.1-2. This statement was interrupted by counsel, and I called counsel to the bench, where Price's attorney, Arlington Foley, moved for a mistrial. Foley argued that the jury may have been tainted by the inference that McDade recognized Price because he had been in custody at the MCC. *Id*. at 87, ℓ.13 to 88, ℓ.5. I denied the motion for mistrial. *Id*. at 88, ℓℓ. 24-25.

This occurred mid-morning on May 2, and it was after the lunch recess that Price again raised his dissatisfaction with Foley's representation, leading to my offer of the three-fold choice now challenged by Price. Court was adjourned at 1:55 on May 2 and resumed the next morning on May 3 at 9:30 a.m., at which time the parties were further heard on the question of how to proceed and the mistrial was declared. Only a matter of hours of trial time separated the defense's request for a mistrial, which I denied, and the mistrial declared based on Price's request for substitute counsel. Obviously circumstances can change rapidly in a trial, and what is true at one moment may not be true the next, but where nothing had occurred since the denial of a mistrial *sought by* Price, the opportunity to agree to a mistrial shortly thereafter based on his desire for substitute counsel hardly seems like the sort of "critical confrontation" with the prosecution that might well have settled Price's fate. To the contrary, it presented an opportunity to get the very thing that he asked for but was denied a few hours before – a mistrial.

A defendant who was denied the assistance of counsel at a critical stage of the proceedings "need not affirmatively prove prejudice under the second prong of the *Strickland* test." *Siverson v. O'Leary*, 764 F.2d 1208, 1216 (7th Cir. 1985), referring to *Strickland v. Washington*, 466 U.S. 668 (1984), which applies to claims that counsel's assistance was ineffective. Even where the Sixth

4

Amendment right to counsel is found to have been abridged, however, the error may not require reversal of conviction. "[N]ot all constitutional violations amount to reversible error." *Satterwhite v. Texas*, 486 U.S. 249, 256 (1988). *See also Thomas*, 856 F.2d at 1017. Sometimes a harmless error standard applies: "if the prosecution can prove beyond a reasonable doubt that a constitutional error did not contribute to the verdict, the error is harmless and the verdict may stand." *Chapman v. California*, 386 U.S. 18, 24 (1967).[1] For example, in *Siverson*, a denial of counsel case in which defense counsel left the courtroom during a critical stage of the trial, the Seventh Circuit held that the burden shifted to the government to prove that the error was harmless beyond a reasonable doubt. *Siverson*, 764 F.2d at 1217. *See also United States v. Morrison*, 946 F.2d 484, 503 n.6 (7th Cir. 1991) [even where prejudice is presumed from a denial of the assistance of counsel, the court must determine whether the constitutional violation was harmless].

In *Siverson*, the Seventh Circuit considered counsel's absence during jury deliberations and the return of the jury's verdict. *Siverson* contains one of the only mentions of mistrial I have found in the cases on "critical stages" of criminal proceedings. In the Seventh Circuit's discussion of whether deliberations and the return of the verdicts constituted critical stages, the Court remarked that the case "provides a textbook illustration of the various issues that can arise during these stages and which may necessitate the advice and assistance of counsel for the accused, including such issues as jury communications, possible motions for mistrial, and, ultimately, polling of the jurors on their verdicts." *Id*. at 1214. Concluding that the circumstances did constitute a lack of counsel's assistance at a critical stage, but were not so egregious as to be prejudicial *per se*, the

---

[1] Even in *United States v. Cronic*, in which the Supreme Court recognized an exception to the *Strickland* standard for circumstances so egregious that prejudice can be presumed, the Court noted that "[a]bsent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated." *United States v. Cronic*, 466 U.S. 648, 658 (1984).

Court of Appeals applied a harmless error analysis and held that reversal of the convictions was not required. *Id*. at 1217-18.[2]

The difficulty, of course, is determining which constitutional violations are amenable to harmless error analysis and which "by their very nature cast so much doubt on the fairness of the trial process that, as a matter of law, they can never be considered harmless." *Satterwhite*, 486 U.S. at 256. In *Satterwhite*, the Supreme Court said that "Sixth Amendment violations *that pervade the entire proceeding* fall within this category." *Id. (emphasis added).* The Supreme Court identified circumstances from prior cases that were not subject to harmless error analysis because the deprivation of counsel contaminated the entire criminal proceeding. These involved a conflict of interest throughout the entire proceedings, a total deprivation of counsel throughout the entire proceedings, and an absence of counsel from arraignment that resulted in the irretrievable loss of defenses not then asserted and preserved. *Id*.

The decision among three that Price was faced with here is not of the same constitutional magnitude as these. It did not affect the fundamental fairness of the trial process. This is particularly so where, as I've already noted, the consent to mistrial option (the one of three choices about which Price here complains) permitted Price to have the relief he had sought only hours earlier in the proceedings, and which had been denied. Furthermore, the particular context here, as summarized by the Court of Appeals as set forth above, shows that I employed "a procedure mindful of the responsibility to help protect the defendant's rights by at least insuring that the

---

[2] In the other federal appellate decision I have found dealing with a mistrial context and Sixth Amendment "critical stage" analysis, the Tenth Circuit found no relief was warranted because, contrary to the defendant's assertion on appeal, the defendant did in fact confer with his appointed counsel as to whether or not to consent to a mistrial. *United States v. Sudduth*, 458 F.2d 1222, 1225 (10th Cir. 1972). Because the claim was disposed of on this factual basis, the Court did not specifically address whether a mistrial decision constituted a "critical stage" or what standard of review would apply if it did. *Id.*

defendant [was] aware of and [understood] the right to have counsel present." *Thomas*, 856 F.2d at 1019. I believe that even the most generous treatment of Price's Sixth Amendment claim subjects it to a harmless error analysis as in *Siverson* and *Morrison*, rather than a rule of automatic reversal.

*Siverson* teaches that the applicable harmless error standard is the one fleshed out in *Chapman v. California*, 386 U.S. 18 (1967). *Siverson*, 764 F.2d at 1217. The Seventh Circuit has approved an interpretation of the *Chapman* harmless error analysis as whether it can be said beyond a reasonable doubt that the error did not contribute to the finding of guilt. *Johnson v. Acevedo*, 572 F.3d 398, 404 (7th Cir. 2009). More simply, the Supreme Court has said that a constitutional error is harmless if it "did not contribute to the verdict." *Satterwhite*, 486 U.S. at 256, 258-59, citing and quoting *Chapman*, 386 U.S. at 243. I readily conclude that, if Price was denied counsel at a critical stage involving his consent to the mistrial, the error was harmless because it did not contribute to a jury's later determination of his guilt. Relief on Ground One will be denied.

### GROUND TWO: ARMED CAREER CRIMINAL STATUS

Price's second ground for relief is his assertion that he is "actually innocent" of the armed career criminal status applied to him at sentencing. The mandatory minimum fifteen-year sentence under 18 U.S.C. §924(e)(1) [the Armed Career Criminal Act or ACCA] applies to a defendant convicted under §922(g)(1) of being a felon in possession of a firearm if the defendant has three prior convictions for "a violent felony or a serious drug offense." What is called the "residual clause" of the ACCA defines "violent felony" to include a felony that "is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another...." 18 U.S.C. §924(e)(2)(B)(ii). Many courts' previously broad interpretations of this residual clause were brought up short by the United States Supreme Court's decision in *Begay v. United States*, 553 U.S. 137 (2008). "In *Begay*, the Court

7

held that, in order to be classified as a violent felony, it is not sufficient that the offense present a serious potential risk of physical injury to another." *Welch v. United States*, 2010 WL 1755062, *5 (7th Cir. May 4, 2010). In addition, the offense has to be "roughly similar, in kind" to the burglary, arson, extortion, and use of explosives offenses listed in the clause, in that it must "typically involve purposeful, violent, and aggressive behavior." *Id.*, quoting *Begay*, 553 U.S. at 143, 144-45.

In Ground Two, Price contends that his two prior convictions for "criminal recklessness" do not constitute crimes of violence for purposes of the sentencing enhancement under §924(e).[3] On this ground, the government invokes procedural default for Price's failure to raise the issue on direct appeal. The government argues that the adverse precedent at the time (pre-*Begay*) is not cause for the default, and also argues that "actual innocence" is not an exception to procedural default of a *Begay* claim. In addition to actual innocence, Price contends that the ineffective assistance of his appellate counsel is cause for his default of the claim on appeal. Regardless of any procedural default analysis, I have reviewed Ground Two on the merits and will deny relief.

In *United States v. Smith*, 544 F.3d 781 (7th Cir. 2008), the Seventh Circuit, applying *Begay*, found that the defendant's prior convictions for criminal recklessness under Indiana law did not constitute qualifying priors for purposes of the ACCA. But this holding did not constitute a conclusion that a conviction under that statute can never be a qualifying prior under the ACCA's residual clause. More precisely, the Court of Appeals found that in that particular case, the record did not permit a conclusion that the defendant's priors qualified.

---

[3] In addition to the two criminal recklessness convictions, Price also had a prior conviction for burglary, which constituted the third predicate prior for application of §924(e)(1). That ramification of the burglary conviction as a violent felony under the ACCA is not challenged by Price in this §2255 motion.

As pertinent to this case, Indiana's statute [IC 35-42-2-2(a)(1)] provides that a "person who recklessly, knowingly, or intentionally performs...an act that creates a substantial risk of bodily injury to another person...commits criminal recklessness." It's clear from this language that the offense encompasses three different mental states, from the merely reckless to the intentional, and "criminalizes *non-purposeful* conduct as well as *purposeful* conduct." *Smith*, 544 F.3d at 786 [emphasis in original]. But "crimes requiring only a *mens rea* of recklessness cannot be considered violent felonies under the residual clause of the ACCA." *Id*. Because the elements of the Indiana offense are inconclusive as to whether a conviction under the statute is or is not a violent felony, courts are permitted to expand their inquiry as to a particular prior conviction "into a *limited* range of additional material in order to determine whether the jury actually *convicted* the defendant of (or, in the case of a guilty plea, the defendant expressly admitted to) violating a portion of the statute that constitutes a violent felony." *Id*. [emphasis in original].

So I can review and consider "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or...some comparable judicial record of this information." *Shepard v. United States*, 544 U.S. 13, 26 (2005). In doing so, I am not trying to determine whether Price's actual conduct in each instance was purposeful, violent and aggressive, but only trying to determine "'which part of the statute the defendant violated.'" *Smith*, 544 F.3d at 786, quoting *United States v. Howell*, 531 F.3d 621, 623 (8th Cir. 2008).

Price's 1996 criminal recklessness conviction was on an information charging him with "CRIMINAL RECKLESSNESS (D)" because he "did recklessly, knowingly or intentionally, and while armed with a shotgun...perform the act of pointing a loaded shotgun at Jazette Neal that created a substantial risk of bodily injury to Jazette Neal, contrary to IC 35-42-2-2 and against the peace and dignity of the State of Indiana." [DE 330-2, p.2]. This text incorporates the same three-

9

part ambiguity as to *mens rea* that the statute itself contains. The plea transcript sheds light on the "(D)" reference in the information, as the offense is there described as "criminal reckless conduct while armed with a weapon, a Class D felony." [DE 330-1, p.4, ℓℓ.1-2]. Criminal recklessness is a Class D felony if "it is committed while armed with a deadly weapon." Then IC 35-42-2-2(b)(2)(A); now at IC 35-42-2-2(c)(2). Price denied pointing the shotgun at Ms. Neal, but admitted that he "pointed [the shotgun] at the car and shot the car." [DE 330-1, p.19, ℓℓ.8-25]. This was found to be adequate to support the guilty plea to the Class D felony. This limited portion of the record of the 1996 conviction establishes that Price's plea was predicated upon his intentional performance of an act – namely, the intentional firing of a shotgun -- that created a substantial risk of bodily injury to another person. Because it was the "intentional" part of the statute that defendant violated and pled guilty to violating, the 1996 criminal recklessness conviction was a proper predicate for application of the ACCA.

The 1990 conviction is similarly based on an information charging Price with a Class D felony of criminal recklessness committed while armed with a deadly weapon, a violation of then-IC 35-42-2-2(b)(2), in that he "did recklessly, knowingly or intentionally perform an act, to wit: fired a shotgun into the house located at 2223 W. 10th Place, Gary, IN, and the said act created a substantial risk of bodily injury to another person." [DE 332-4, p.2]. Again we have a charging instrument ambiguous as to the *mens rea*, and so proceed to the record of Price's plea of guilty. The colloquy between Price and the court at his change of plea contains Price's acknowledgment that his plea is based on his admission "that on the date in question, [he] **knowingly or intentionally** performed an act, to wit: firing a shotgun into a house." [DE 332-3, p.5, ℓℓ.5-14]. [emphasis added]. Of course, a person could fire a shotgun into a house recklessly or even negligently. The accidental discharge of a weapon in a crowd of people comes to mind. But the

10

plea colloquy contains Price's admission that he did so purposely, in violation of the "knowing" or "intentional" prongs of the Indiana criminal recklessness statute, either of which satisfies the *Begay* standard. *United States v. Ramirez*, 606 F.3d 396 (7th Cir. 2010); *United States v. Dismuke*, 593 F.3d 582 (7th Cir. 2010). This record supports the conclusion that the 1990 conviction was properly treated as a qualifying violent felony for purposes of the ACCA because the crime was purposeful, violent and aggressive. Ground Two is without merit.

## GROUND THREE: SPEEDY TRIAL ACT

Price's third ground for relief is that the delay in the commencement of his second trial violated the Speedy Trial Act because it began nearly two years after the return of the indictment. [DE 322, p.11]. In point of fact, the docket reflects that the indictment was returned on September 16, 2004, and the trial at which Price was convicted began on May 15, 2006. The government responds to this ground on the merits, and points out that I analyzed the speedy trial issue in a detailed order of April 14, 2006. In his numerous memoranda filed in support of his §2255 motion, Price does not offer any particular argument why that analysis was wrong.

Because I believe my prior analysis of the prosecution's compliance with the Speedy Trial Act remains correct, I readily conclude that Ground Three is without merit, but I will briefly address particular points of Price's on this issue. Price cites cases which he says support the proposition that a delay over one year is presumptively prejudicial. These cases, such as *United States v. Oriedo*, 498 F.3d 593, 597 (7th Cir. 2007), involve Sixth Amendment speedy trial analysis, rather than the statutory Speedy Trial Act computation, and in any event merely treat a delay longer than one year as a triggering mechanism requiring further analysis of other factors in the constitutional analysis. None of these cases entitles Price to relief here. Price argues that his pro se filings can't toll the speedy trial clock because the court struck them. My Speedy Trial Act analysis in the April 14, 2006 order does not rely on stopping the clock at any time based on a pro

11

se filing by Price that was later stricken. Finally, Price argues that after the mistrial in May 2005, I set the trial for October 31, 2005, and some time later belatedly (and unsuccessfully) tried to fix a Speedy Trial Act problem by making "ends of justice" findings *nunc pro tunc* on August 11, 2005. To the contrary, the record contains my written order of May 4, 2005, memorializing the mistrial, resetting the trial to October 31, and containing findings for my conclusion that the period of the continuance constituted excludable time under 18 U.S.C. § 3161(h)(8)(B)(I) and (iv). No relief will be granted on the Speedy Trial Act claim in Ground Three.

## GROUND FOUR: MEANINGFUL APPEAL & INCOMPLETE RECORD

Price contends in his fourth ground for relief that he was denied his right to a meaningful appeal because the court reporter failed to maintain an audio recording of the proceedings during the May 2, 2005 voir dire. A criminal defendant has a right to a meaningful appeal based on a complete transcript. *Hardy v. United States*, 375 U.S. 277, 279 (1964); *United States v. Jeffers*, 570 F.3d 557, 564 (4th Cir. 2009). Nonetheless, relief in the form of a new trial is warranted only where a defendant shows that errors in or omissions from the transcript specifically prejudiced his rights on appeal. *United States v. Brown*, 202 F.3d 691, 696 (4th Cir. 2000). This claim is rejected because Price fails to demonstrate that there was any error in the record of the proceedings and because he shows no prejudice in any event.

Ground Four invokes 28 U.S.C. §753(b), the statute that governs the procedures court reporters follow in recording official court proceedings. Each session of the court is to be "recorded verbatim by shorthand, mechanical means, electronic sound recording, or any other method," subject to Judicial Conference regulations. *Id*. Where as here, the court reporter records the proceedings by means of stenographic shorthand using her stenotype machine, she may or may not choose also to make an audio recording of the proceedings for her reference if needed in

12

preparation of a transcript. The official record of the court proceeding is the transcript prepared and certified by the reporter, not the disk in the stenotype machine, nor any paper tape generated by the machine, and certainly not any audio recording she may have made: "[t]he transcript in any case certified by the reporter...shall be deemed prima facie a correct statement of the testimony taken and proceedings had." *Id*. What the statute requires to be preserved for ten years is "the original shorthand notes or other original records so taken," which would be the disk or paper tape containing the shorthand notes the court reporter creates during the hearing using the stenotype machine. *Id*. Because any audio recording is merely supplemental to the stenographic shorthand, and a matter of convenience to the court reporter at his or her option, it is not subject to the statute's mandate of ten years' retention.

The United States District Court for the Northern District of Illinois has explored these same waters in the helpful case of *Emmel v. Coca-Cola Bottling Company of Chicago, Inc.*, 904 F.Supp. 723, 753 (N.D.Ill. 1995). That court rejected a defendant's attempt to supplement the record of the case with all existing audio tapes. Judge Holderman cited the Judicial Conference policies clarifying what the statute indicates: "Back up tapes made by court reporters for their own convenience and not otherwise required by 28 U.S.C. § 753 are the personal property of the court reporters. There is no public entitlement to these recordings." *Id*. at 753, quoting *Guide to Judiciary Policies and Procedures*, Court Reporter's Manual, Vol. VI, Ch. XVI at 14 (Oct. 1991). The same language is found in the *Guide* today, with additional language not pertinent here about tape recordings of arraignments, guilty pleas and sentencings that are certified by the court reporter and filed with the Clerk of Court as the official record of such proceedings. *Guide to Judiciary Policies and Procedures*, Vol. 6, Ch. 3, §380.40 (April 23, 2010).

Price misunderstands the requirements of the statute, and creates a false distinction between "back up tapes," to which he does not claim an entitlement, and the "original tape," to which he

13

claims a right of access. There is no such "original tape." The proceedings were recorded stenographically by the official court reporter. Her certified transcript was prepared and filed when requested, and is deemed *prima facie* a correct statement of the proceedings. Any audio recording she made was not required by statute, was not an official record of the proceedings, was not required to be maintained or filed with the Clerk of Court, and was her personal property to which the parties (including Price) had no entitlement or right of access.

As to prejudice from an allegedly faulty record, Price appears to contend that the official transcript omitted two matters. First, Price suggests that the audio recording would have shown that Price had told the court he had no intention of participating in voir dire. [DE 321, p.9]. Even if true, the legal significance of the record so reflecting is not clearly stated by Price nor apparent to me. In any event, I took Price's failure to meaningfully participate in jury selection into account in making the decision to declare a mistrial.[4] Second, Price contends that the recording would have disclosed that the "outburst" by prospective juror McDade "tainted the entire jury pool." [DE 321, p.9]. To the extent that Price argues the availability of the audio recording would have demonstrated that the entire jury pool was tainted *and that he was convicted by a prejudiced jury*, the simple answer appears to be that THAT jury did not convict him. That was the jury discharged based on the mistrial to which Price agreed. No relief will be granted on Ground Four.

---

[4] My statement on the record concerning the mistrial contains the following:

> And Mr. Price told me this morning that he did not participate at all in the jury selection process except to tell his lawyer to use all 10 of his strikes, but he did not participate in how those peremptory challenges were going to be exercised. And as a result of that, he did not meaningfully participate in the selection of the jury, which I think is -- is a manifest necessity. Even in the absence of Mr. Price asking for a mistrial, that the ends of justice would be defeated if an individual was brought before a jury in which he did not participate in the selection of.

Transcript of May 3, 2005 [DE 86], p.14, ℓℓ. 11-20.

## CONCLUSION

Because, for the reasons discussed above, the motion, the briefs and the record of the case conclusively show that Price is entitled to no relief under 28 U.S.C. §2255, no hearing will be held, and Price's Motion to Vacate, Set Aside or Correct Sentence [DE 321] is DENIED AND DISMISSED with prejudice. The Clerk shall enter judgment accordingly.

**SO ORDERED**.

ENTERED: July 8, 2010

    s/ Philip P. Simon
CHIEF JUDGE
UNITED STATES DISTRICT COURT